JUDGE PRYOR
delivered the opinion oe the court.
Clark O. Smither died in the county of Woodford, childless, leaving a last will and testament, his widow, Margaret E. Smither (the appellant), surviving him. Sidney U. Robertson, the executor of his will, filed a petition in equity in the Woodford Circuit Court for the purpose of having a proper construction of that instrument and a settlement of the estate. He alleges that the personal estate is insufficient to pay the debts of the devisor, and obtained an injunction, as provided by law in such cases, against the creditors, restraining them from instituting suits upon their respective claims, and asks the chancellor to adjudge a sale of so much of the real estate of the devisor as maybe necessary to discharge the indebtedness. It is further alleged that false and fraudulent claims are being asserted against the estate, but no statement is made as to their nature or amount. The widow of the devisor and all of the devisees and heirs of the testator are made defend *232 ants to the action. The devisor at his death was the owner of a valuable estate, consisting mostly of lands, and in disposing of it seems to have made a just and liberal provision for his wife. The widow files her answer to the petition by the executor, in which she manifests an anxiety to abide by the provisions of her husband’s will, but says that she has failed to accept or renounce its provisions, or to claim dower in her husband’s estate, and can make no election with reference thereto within the time required by law without the aid of the chancellor; that it is alleged her husband is largely indebted as one of the members of the firm of McClure, Rowland & Co., engaged in the manufacture of patent roofing, and that one Joel McTyre has asserted what she believes to be a false and fraudulent claim against her husband’s estate for twenty-four thousand dollars, which, if allowed him, will render the estate insolvent. She further states that she is entirely ignorant of the extent of her husband’s liabilities, and is unable in the present condition of the estate to anticipate the result of the litigation in regard to these large claims asserted against it; that the creditors of the estate have been enjoined, not by her procurement, but at the instance of the executor, from prosecuting their claims, thus preventing any adjudication upon them within the twelve months allowed her by the statute to accept or reject the provisions of her husband’s will. She asked the chancellor, in view of the facts presented, to permit her to make a conditional acceptance of the liberal devises made for her by electing to hold under the will in the event the alleged claim of Joel McTyre is disallowed, or to renounce its provisions if this claim is held to be valid.
Upon the hearing the court below refused to permit her to make a conditional election or afford her any relief, and from this judgment she has appealed.
Section 13 of chapter 30, Revised Statutes (1 Stanton, 424), provides “ that a widow may relinquish what is given her by *233 the will of her husband, and thereupon receive her dower and distributable share as if no will had been made; but such relinquishment must be made within twelve months after the probate, and acknowledged and left for record with the clerk of the court where probate was made, or acknowledged before two subscribing witnesses, and proved by one of them before, and left with, the clerk.”
The statute recited is a mere enactment of that principle of equity recognizing the common-law right of the wife to dower, but requiring her when the husband has made a different provision to abide by it, or adhere to her common-law right. She is not allowed to accept what is given her by the will, and at the same time defeat the object and intention of the devisor by asserting her right to dower, but must make her election.
It is evident that the object of the enactment, requiring a renunciation by the widow of a devise to her in lieu of dower within twelve months from the probate of the will, was to facilitate the settlement and distribution of estates, and her right to dower is made to depend by the statute upon her renunciation within that time. The question presented in this case is, can the widow make an election in any other mode than that pointed out by the statute? The character of the devises made to Mrs. Smither by the will of her husband indicates that they are much more valuable than the property to which she would be entitled by renouncing its provisions.
The litigation involving the whole of her husband’s estate has not been terminated; and if large claims that are now being asserted against it are successfully prosecuted, his whole estate will be exhausted in the payment of debts, and an election by her accepting the beneficent provisions of the will would render her entirely destitute. Such an election could not be said to have been made under a misapprehension of facts, as the petition filed by the executor as well as the *234 answer of the widow, discloses the existence of these alleged false and fraudulent claims that, if pronounced valid, bankrupts the estate, and if defeated by the executor, gives to the widow the right to the possession and enjoyment of the property devised to her.
Prior to the adoption of -the statute fixing the time within which the widow is required to make the election, although she was then, as now, compelled to elect between a provision made for her in lieu of dower and her right to dower, still if she in making the election acted in ignorance of her rights, and had no means of knowing what they were, a court of equity would grant her relief; and in cases where no election had been or could be made, for the reason that the widow could not ascertain or know the condition or character of the estate, the chancellor postponed her election until an account was taken and the condition of the estate ascertained.
In Bishop on the Law of Married Women (page 441), in speaking with reference to statutory enactments on this subject, it is said, “ In order for a widow to be bound by her election she must, as a general thing, know, or at least have the means of knowing, the facts essential to an intelligent choice; and in a sort of general way it may be said that the election, to bind her, should be made with a full knowledge of its consequences. In other words, it must not be made under a misunderstanding.”
In the case of Butricke v. Broadhurst, referred to in Clancy on Rights (page 250), where the widow, who had been in possession of property devised to her by her husband’s will five years, filed a bill claiming the right after that time to elect to take against the will, Lord Thurlow dismissed it, and said “that if she had filed a bill stating that she did not know the state of the fund, and desiring the debts and legacies paid, she might have done so; but he wished it understood that the bill was filed without any suggestion that the real or personal *235 estate was in such a situation as to render it doubtful what the result would be.”
In the case of Kidney v. Conesmaker, where the widow made her election under a mistaken impression that the creditors were not to make any claim to the estate devised to her, it was held “ that she was not bound by it, and had the right to postpone her election until an account had been taken by authority of the court.” (Clancy on Rights, p. 249; Hall v. Hall, 2 McCord Ch. Rep. 280.)
If a court of equity, after an election has been made by the widow, will, upon a state of case showing that she has been imposed upon, or has made her choice when in ignorance of the condition of the estate and without the means of ascertaining it, relieve her in order that the election may be made understandingly, we see no reason why before an election is made, although the time may be limited by statute, relief may not be granted when the chancellor himself sees that no intelligent choice can be made. It is obvious in the present case that the provision of the will is much more beneficial than the dower, and it would not only be a great hardship on the widow, but a violation of a plain rule of equity, to deprive her of the property intended for her use and benefit by her husband in requiring an election to be made when the whole estate is imperiled by litigation, and so unsettled as to preclude the chancellor, even if he desired, from making a judicious choice for her.
In 2 Story’s Equity Jurisprudence (sec. 1098) it is said the general rule is “that the party is not bound to make an election until all the circumstances are known, and the state and condition and value of the funds clearly ascertained; for until it is known it is impossible for the party to make a discriminating and deliberate choice.”
It would, however, render the statute by which this election is required to be made inoperative if in every case the party *236 required to make an election could resort to a court of equity to have the value of each alternative claim definitely fixed, or the estate settled so as to make an exhibit of the precise amount to which the heirs, devisees, and creditors are entitled. It must therefore be understood that it appears in this case not only that the condition of the property and estate is such that no intelligent or judicious choice can be made by the widow within the time prescribed by law, but also that the executor by his suit in equity.for a settlement of the estate has brought the widow into court by making her a defendant; and the assertion of her right to postpone this election can in no event cause a delay in the progress of the suit for a final settlement, either for the purposes of distribution or the payment to creditors. In such a case the chancellor by assuming jurisdiction in no manner interferes with the object and design of the statute, and at the same time enforces a well-recognized principle of equity. The only remedy the appellant has is by invoking the aid of a court of equity in postponing the election she is required to make until the liabilities of her husband’s estate are ascertained.
"Wherefore the judgment of the court below is reversed, and cause remanded with directions to permit the "widow to make the conditional election, or postpone the same until the condition of the estate is ascertained by the confirmation of the commissioner’s report of settlement, and for further proceedings consistent with this opinion.