NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0478n.06

No. 24-5303

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 03, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JOY WILLIAMS, | ) | |
|     Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| LOUISVILLE RECOVERY SERVICE, LLC, | ) | |
|     Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: BATCHELDER, MOORE, and BUSH, Circuit Judges.

**ALICE M. BATCHELDER**, **Circuit Judge**. Joy Williams made several visits to the emergency room for medical treatment. Because she never paid the medical bills from any of these visits, her healthcare provider turned the bills over to a collection agency. When that agency then attempted to collect on those debts several years later, Williams sued under the Fair Debt Collection Practices Act, alleging that the agency had unlawfully threatened to collect on time-barred debts. The district court disagreed and held that the statute of limitations for collecting on these debts had not yet expired. We affirm.

**I.**

Between 2011 and 2015, Joy Williams had made seven relevant visits to the emergency room at Hardin Memorial Hospital. Each time she did so, Williams first signed a "Conditions and Authorization for Treatment" form and then received treatment from Elizabethtown Emergency

Physicians, a third-party healthcare provider. While the authorization form contained many provisions, only three are relevant here. First, the form authorized the Hospital and its third-party providers to perform various "diagnostic tests" and "procedures" to determine the patient's health problem. Second, the form clarified that most of the Hospital's healthcare providers are "independent contractors and practitioners" and that these third-party providers bill separately. And third, the form explained that, by accepting treatment, the patient also agreed to "accept full responsibility for all charges associated with the care provided."

Because Williams never paid the medical bills from any of the relevant visits, Elizabethtown Emergency Physicians turned her bills over to Louisville Recovery Service, a collection agency. Louisville Recovery then reported the debts to the major credit bureaus, which hurt Williams's credit score. All in all, Williams owed $1,986.61 across her eight unpaid bills.

Several years passed before Williams eventually discovered the negative history on her credit report. Believing that she did not have any outstanding medical debt, Williams sent a letter to Louisville Recovery disputing the bills. Louisville Recovery then responded to Williams one year later and provided her with an "account itemization" that identified the eight outstanding bills from her emergency room visits. Soon after that, on April 1, 2021, Louisville Recovery followed up with another letter that threatened to pursue legal action if Williams failed to pay.

Williams sued Louisville Recovery under the Fair Debt Collection Practices Act, alleging that Louisville Recovery had unlawfully threatened to collect on time-barred debts. Both parties then moved for summary judgment. The district court held that the statute of limitations for collecting on these debts had not yet expired and awarded summary judgment to Louisville Recovery. Williams now appeals.

**II.**

We review a district court's award of summary judgment de novo. *Ward v. NPAS, Inc.*, 63 F.4th 576, 582 (6th Cir. 2023). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, we view the evidence in the light most favorable to the non-moving party. *Raimey v. City of Niles*, 77 F.4th 441, 447 (6th Cir. 2023).

**III.**

To bring a claim under the Fair Debt Collection Practices Act, a plaintiff must show that (1) she is a "consumer"; (2) she incurred the debts "primarily for personal, family or household purposes"; (3) the defendant is a "debt collector"; and (4) the defendant's conduct violated the Act. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). Here, the parties dispute only this fourth element—that is, whether Louisville Recovery's threat-to-sue letter violated the Act.

The Fair Debt Collection Practices Act makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. That prohibition means, among other things, that a debt collector cannot threaten "to take any action that cannot legally be taken." § 1692e(5). A debt collector makes such an unlawful threat if it threatens to take legal action against a time-barred debt. *See Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 398-99 (6th Cir. 2015). The only issue in this appeal, then, is whether the statute of limitations for collecting on Williams's debts had already expired when Louisville Recovery sent its threat-to-sue letter.

The statute of limitations for collecting a debt in Kentucky depends on whether the contract creating the debt is written or oral. If the parties' contract is a written agreement, then Kentucky

uses a 15-year statute of limitations.[1]  Ky. Rev. Stat. Ann. § 413.090.  But if the parties' contract is an oral agreement, then Kentucky instead uses a 5-year statute of limitations.  Ky. Rev. Stat. Ann. § 413.120(1).  Here, we must first determine whether the contracts creating Williams's debts were written or oral before we can ultimately decide whether Louisville Recovery unlawfully threatened to collect on time-barred debts.  Louisville Recovery's threat to sue violates the Fair Debt Collection Practices Act only if the 5-year statute of limitations for oral contracts applies.

Under Kentucky law, a written contract is one that contains all the essential terms for a contract in writing.  *Cornett v. Student Loan Sols., LLC*, 672 S.W.3d 852, 858 (Ky. Ct. App. 2023).  A written agreement contains all the essential terms when the document includes the parties to the contract, the price to be paid, and the performance to be rendered.  *Id.*  If the contract is missing any of these terms, then Kentucky treats that partially written agreement as an oral contract.  *Mills v. McGaffee*, 254 S.W.2d 716, 717 (Ky. 1953).

Williams argues that the authorization forms she signed failed to create written contracts—and are therefore subject to the 5-year statute of limitations—because the forms did not identify the parties, the price, or the performance.  We disagree and address each issue in turn.

## A.

First, Williams argues that the authorization forms failed to create written contracts because they did not identify Elizabethtown Emergency Physicians as a party to the contracts.  But this argument fails because Kentucky does not require that a contract name its third-party beneficiaries.

---

[1] Kentucky now uses a 10-year statute of limitations for written contracts created after July 15, 2014.  Ky. Rev. Stat. Ann. § 413.160.  But because this new statute of limitations applies only to Williams's final medical bill from July 23, 2015—and because Louisville Recovery timely attempted to collect on that debt within the 10-year window—we refer only to the 15-year statute of limitations.

*Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009); *see also* Restatement (Second) of Contracts § 308 (Am. L. Inst. 1981) ("It is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made."). Nor does Kentucky treat an otherwise valid written contract as an oral agreement merely because it did not identify its third-party beneficiaries by name. *See Home Indem. Co. v. St. Paul Fire & Marine Ins. Co.*, 585 S.W.2d 419, 424 (Ky. Ct. App. 1979). So, taken together, these two principles mean that the 15-year statute of limitations will apply here if Elizabethtown Emergency Physicians qualifies as a third-party beneficiary of Williams's contract with the Hospital. *Id.*

A non-party qualifies as a third-party beneficiary when the contract was created for that party's "actual and direct benefit." *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985). In determining whether a contract is created for a third party's benefit, we consider both the agreement's terms and its surrounding circumstances. *Prime Finish, LLC v. Cameo, LLC*, 487 F. App'x 956, 959 (6th Cir. 2012) (citing *Olshan*, 276 S.W.2d at 831).

Here, Williams concedes, as she must, that Elizabethtown Emergency Physicians is a third-party beneficiary of the authorization forms, and we need not look further than the forms themselves to see why. Indeed, the forms make clear that the Hospital uses mostly "independent contractors and practitioners" to provide care, that these independent contractors and practitioners "bill[] separately," and that the patient agrees to "accept full responsibility for all charges associated with the care provided." Under this arrangement, the patient's promise to pay benefits the third-party providers—not the Hospital—because the Hospital rarely provides patient care directly and therefore does not bill most patients who sign the form. So because Elizabethtown

Emergency Physicians directly benefits from the Hospital's contract with Williams, it qualifies as a third-party beneficiary under those agreements.

**B.**

Next, Williams argues that the authorization forms failed to create written contracts because they did not include a price. True, the forms did not assign a specific price for the services to be provided, but that does not transform these written agreements into oral contracts because Kentucky does not require a written contract to assign such a price when the agreement otherwise includes a "definite promise to pay." *Lyons v. Moise's Ex'r*, 183 S.W.2d 493, 495 (Ky. 1944) (applying Kentucky's 15-year statute of limitations). And here, the authorization forms included such a definite promise because Williams agreed to "accept full responsibility for all charges associated with the care provided."

Williams responds that *Lyons* does not apply unless the parties' agreement includes a definite promise to pay *and* an "objective standard" for calculating the total price. But Williams misreads *Lyons* because not even the contract at issue there included an objective standard for determining price separate from the definite promise to pay. *See Lyons*, 183 S.W.2d at 496 (explaining that the contract contained only a definite promise to pay). *Lyons* held instead that a definite promise to pay "all charges" incurred—like the one Williams made here—is *itself* what supplies the objective standard for later calculating the price. *Id.* That is, the party has agreed in writing to pay all the charges that she incurs, and that is a definite amount that we can later calculate through parol evidence. *Id.*

**C.**

Finally, Williams argues that the authorization forms failed to create a written contract because they did not describe the performance to be rendered. But this argument, too, misses the

mark.  Kentucky does not require written contracts to provide every detail of performance—only to describe the required performance with reasonable certainty.  *Fisher v. Long*, 172 S.W.2d 545, 547 (Ky. 1943).  And reasonable certainty simply means that each party can understand the other's intended performance.  *Id.*

Here, the authorization forms reasonably described the performance required under the contract.  Each form explained that the Hospital (through its third-party providers) would perform various "diagnostic tests" and "procedures" to determine Williams's health problem, and given the context in which these forms are signed—that is, at the emergency room while a patient's condition and required treatment are still unknown—the forms could not reasonably have been any more specific about the performance that would be provided.  For that reason, we conclude that any reasonable patient could have understood the performance required of the Hospital under the contract.  Indeed, to hold otherwise would require hospital emergency rooms to hand "patient[s] an inches-high stack of papers detailing . . . each and every conceivable service" that the hospital provides, *cf. DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 264 (3d Cir. 2008), and Kentucky law does not require such an absurd result, *Fisher*, 172 S.W.2d at 547 (instructing courts to give Kentucky contracts a "practical interpretation").

\* \* \*

In sum, we hold that the authorization forms included all the essential terms for a contract, and that they are therefore written contracts subject to Kentucky's 15-year statute of limitations.  That means that the statute of limitations for collecting on Williams's debts had not yet expired when Louisville Recovery threatened to sue, which in turn means that Louisville Recovery did not violate the Fair Debt Collection Practices Act.

**IV.**

Because the statute of limitations for collecting on Williams's debts had not expired when Louisville Recovery threatened to sue, Louisville Recovery's threat did not violate the Fair Debt Collection Practices Act. We **AFFIRM** the district court's award of summary judgment.